UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:
     Kevin Ho                                                  Case No.: 10-77477-AST
                                                                   Chapter 7
                                Debtor.
-------------------------------------------------------x

Kevin Ho

                                Plaintiff,                 Adv. Pro. No.: 18-8091-AST

              - against -

JPMorgan Chase Bank, N.A. and
Chase Home Finance, LLC
                                Defendants.
-------------------------------------------------------x

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012(b) AND <u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

Pending before the Court is the Rule 12(b)(6) motion filed by defendants, Chase Home Finance, LLC and JP Morgan Chase Bank, N.A. (hereinafter, "Chase" or "Defendants") seeking to dismiss this adversary proceeding commenced by plaintiff-debtor, Kevin Ho, claiming violations of Debtor's discharge injunction imposed by Section 524 of the Bankruptcy Code. For the reasons set forth herein, Defendants' motion to dismiss is granted.

### <u>JURISDICTION</u>

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K) and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Findings of fact and conclusions of law are not required on a Rule 12(b)(6) motion. This Court accepts as true all properly plead factual allegations in the Complaint and draws all inferences in favor of the Plaintiff for the purposes of deciding this Motion.

## BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff's Complaint (the "Complaint") alleges that Chase violated his discharge injunction by, *inter alia*, actively attempting to collect a discharged debt, performing "impermissible hard inquiries" into Plaintiff's credit status, and willfully misreporting Plaintiff's discharged debt to credit reporting agencies [Dkt Item 1, ¶¶ 16, 17, 18 and Exhibits A, B, C].

Plaintiff received his chapter 7 bankruptcy discharge on December 21, 2010 [Case No. 10-77477-AST, Dkt Item 21], and a Final Decree was entered on June 21, 2012 [Ibid, Dkt Item 40]. At that time, the Chapter 7 Trustee's Final Account [Ibid., Dkt Item 39] reflected two, "not filed" secured claims owing to Chase in the amounts of $209,954.90 and $200,418.11.

On July 7, 2017, Plaintiff's counsel filed a motion to reopen the Chapter 7 case pursuant to 11 U.S.C. §350(b), seeking to file a suit against Chase. [Ibid, Dkt Item 41] By Order dated May 31, 2018, this Court granted Plaintiff's motion to reopen the Chapter 7 case for the limited purpose of filing an adversary proceeding against Chase. [Ibid., Dkt Item 44] On June 20, 2018, Plaintiff filed his complaint and commenced the instant adversary proceeding against Chase. [Adv. Pro. No. 18-8091-AST, Dkt Item 1]

On November 19, 2018, Defendants filed their Motion to Dismiss seeking to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(6). [Dkt Item 6]

---

[1] The factual background and procedural history are derived from the pleadings and exhibits submitted by the parties.

Defendant's Memorandum of Law ("Memo") accompanying the Motion argues that the Complaint makes conclusory statements which are unsupported by the exhibits in the Complaint [Dkt Item 6, Memo at pp. 3].

On January 18, 2019, Plaintiff filed an Affirmation in Opposition to Defendant's Motion, which did not request leave to amend the Complaint. [Dkt Item 8] On February 22, 2019, Defendant responded by filing a Letter Brief. [Dkt Item 10] Thereafter, on April 6, 2020, the Defendant filed a Memorandum of Law in Support of the Letter Brief. [Dkt Item 11]

## LEGAL ANALYSIS

### I.   *Standard Applicable to a Motion to Dismiss*

This Court has previously addressed the application of Rule 12(b) and the flexible plausible pleading standard established by the Supreme Court in several published decisions. *See Devices Liquidation Trust v. Pinebridge Vantage Partners (In re Pers. Commun. Devices, LLC)*, 528 B.R. 229, 233-34 (Bankr. E.D.N.Y. 2015); *Moxey v. Pryor (In re Moxey)*, 522 B.R. 428, 437-38 (Bankr. E.D.N.Y. 2014); *In re Ippolito*, 2013 WL 828316, at *3-4 (Bankr. E.D.N.Y. Mar. 6, 2013), discussing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (pleading standard for a § 1983 claim) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (pleading standard for anti-trust conspiracy claim); *see also In re Int'l Tobacco Partners, Ltd.,* 462 B.R. 378, 385 (Bankr. E.D.N.Y. 2011); *In re Jones*, 2011 WL 1549060, at *2-3 (Bankr. E.D.N.Y. Apr. 21, 2011); *In re Coletta*, 391 B.R. 691, 693-94 (Bankr. E.D.N.Y. 2008).

Under the U.S. Supreme Court's *Iqbal/Twombly* analysis, to survive a motion to dismiss, a complaint must contain sufficient factual matter, which, when accepted as true, is adequate to "state a claim to relief that is plausible on its face". *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the relief sought. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted" so as to create liability. *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal citations omitted)).

Neither *Iqbal* nor *Twombly* departed from the standard that, in considering a Rule 12(b)(6) motion, a court is to accept as true all factual allegations in the Complaint and draw all inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *see also Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). However, as the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, a court need not "accept as true a legal conclusion couched as a factual allegation," and "[d]etermining whether a complaint states a plausible claim for relief will [. . .] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 678-79. (citing FED. R. CIV. P. 8(a)(2)).

In deciding the Motion to Dismiss, this Court must limit its review to facts and allegations contained in the Complaint, documents incorporated into the Complaint by reference or attached as exhibits, and matters of which this Court may take judicial notice. *Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also, Int'l Tobacco Partners, Ltd.,* 462 B.R. at 385 ("courts may consider documents that are integral to the complaint in deciding a motion to dismiss"); *Moxey*, 522 B.R. at 437-38.

As discussed in greater detail below, Plaintiff fails to plead sufficient facts upon which relief can be granted.

## *II. The Causes of Action are Insufficiently Plead*

### A. Debtor has Failed to Plead a Violation of the Discharge Injunction

"One of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'" *In re McKenzie-Gilyard*, 388 B.R. 474, 481 (citing *Marrama v. Citizens Bank,* 549 U.S. 365, 367 (2007)) (Bankr. E.D.N.Y. 2007). The injunction imposed by the discharge order is vital to debtors' "fresh start," because it shields them "from creditors' attempts to collect discharged debts after bankruptcy." *McKenzie-Gilyard*, 388 B.R. at 480. Section 11 U.S.C. §524(a)(2) provides:

> (a) A discharge in a case under this title-
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

As the Supreme Court has recently stated, courts must use an objective analysis for determining when a creditor should be held in civil contempt for violating § 524. *See Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019):

> A court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

*Id.* At 1799. This standard "strikes the 'careful balance between the interests of creditors and debtors' that the Bankruptcy Code often seeks to achieve." *Id.* at 1804 (citing *Clark v. Rameker*, 573 U.S. 122, 129, 134 S. Ct. 2242, 189 L.Ed.2d 157 (2014)).

Here, Debtor alleges that the Defendant violated the discharge injunction in three ways: 1) making demands for payment of a discharged debt through repeated demands for payment and collection letters [Dkt Item 1, ¶ 16, Exhibit A], 2) performing impermissible hard inquiries into Plaintiff's credit status [Dkt Item 1, Exhibit B], and 3) willfully misreporting Plaintiff's discharged debt to credit reporting agencies [Dkt Item 1, ¶ 18, Exhibit C]. However, none of these acts or conduct could constitute a violation of § 524 under the *no fair ground of doubt* standard described in *Taggart*.

### 1) Debtor Has Failed to Allege that Defendants' Letters Were an Attempt to Collect a Discharged Debt

Debtor's use of the term "discharged debt" in the Complaint is misleading and does not accurately describe the status of a secured debt following the conclusion of a Chapter 7 bankruptcy case. Debtor alleges that Plaintiff was "sent demands for payment; and felt so compelled by the credit reporting and repeated collection letters that he erroneously made payment to a discharged debt" after Debtor received letters from Chase which, *inter alia*, described a default debt. [Dkt Item 1, ¶ 16] The discharge injunction protects a fundamental policy of the Bankruptcy Code—providing honest but unfortunate debtors with a fresh start by being relieved of personal liability for their discharged debts. *See In re Gill*, 529 B.R. 31, 37 (Bankr. W.D.N.Y. 2015), *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992); *see also In re Lemieux*, 520 B.R. 361, 364 (Bankr. D. Mass. 2014); *In re Nassoko*, 405 B.R. 515, 521–22 (Bankr. S.D.N.Y. 2009). However, the bankruptcy discharge extinguishes only "the personal liability of the debtor." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (holding that while the bankruptcy discharge extinguishes one "mode of enforcing a claim—namely, an action against the debtor in personam", it leaves "intact another—namely, an action against the debtor *in rem*"). As such, a secured creditor's "right to foreclose on the mortgage survives or passes

6

through the bankruptcy" and remains enforceable under state law. *Johnson*, 501 U.S. at 83; *see also In re Pennington–Thurman*, 499 B.R. 329, 332 (8th Cir. BAP 2013); *Mayton v. Sears, Roebuck & Co.*, 208 B.R. 61, 66–67 (9th Cir. BAP 1997); *Drew v. Chase Manhattan Bank, N.A.*, 185 B.R. 139, 141–42 (Bankr. S.D.N.Y. 1995).

New York bankruptcy courts recognize that compliance with state-mandated foreclosure procedures, including communication of written notices to debtors, is not a violation of the discharge injunction of § 524(a)(2). *Gill*, 529 B.R. at 37. In *Gill*, the alleged violation of the discharge injunction consisted of a single pre-foreclosure notice issued by the secured creditor holding a mortgage lien against debtor's principal residence. *Id.* at 33. The offending notice, like the third letter in Plaintiff's Exhibit A in this case, contained the exact language that is statutorily mandated by New York Real Property Actions and Proceedings Law § 1304 ("RPAPL"). *Id.* The *Gill* court held that "[t]he discharge injunction does not prevent a secured creditor from enforcing its mortgage lien *in rem* once the stay terminates—and, under New York law, a foreclosure action against a mortgagor's principal residence requires a pre-foreclosure notice in compliance with RPAPL § 1304." *Id.* at 33. Here, the mortgage and New York Law required Defendants to provide thirty days' written notice of default in making mortgage payments as a condition precedent to commencing a foreclosure action; *see Deutsche Bank Trust Co. Americas v. Shields*, 116 A.D.3d 653, 654 (2nd. Dept. 2014).

Plaintiff mischaracterizes these state-mandated pre-foreclosure notices as debt collection letters in violation of § 524(a)(2). However, Defendants did not seek to collect the discharged in personam liability of Debtor, and expressly included a bankruptcy disclosure on the notice which stated, *inter alia*, that to the extent the original obligation was discharged, "this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a

7

debt or to impose personal liability for such obligation." [Dkt Item 10]. Thus, when Defendants provided the mandatory pre-foreclosure notice they did not violate the discharge injunction.

The Complaint also alleges that Plaintiff was "sent demands for payment; and felt so compelled by the credit reporting and repeated collection letters that he erroneously made payment to a discharged debt." [Dkt Item 1, ¶ 16]. The first two letters in Exhibit A to the Complaint, dated November 21, 2012 and December 19, 2012, are identical and make no mention of any debt; instead the letters appear to be invitations to apply for a mortgage modification. [Dkt Item 1, Exhibit A] As such, Chase had an "objectively reasonably basis" as a matter of law for thinking that those solicitations for applying for a loan modification "might be lawful." *Taggart*, 139 S. Ct. at 1799.

By contrast, the third letter in Exhibit A, dated April 17, 2013, does describe a debt default and is titled "Acceleration Warning (Notice of Intent to Foreclose)", and the fourth and fifth letters, dated May 6, 2014 and July 31, 2014, do describe an upcoming payment due of $300. However, these letters, as with the first two letters discussed above, were a "legal requirement" to permit Chase to file a valid foreclosure action in New York for non-payment. Any reference in that letter for how Plaintiff could "cure the default" with the stated amount past due was a legal requirement to commence the foreclosure process. Also, both letters contain the following warning in bold:

> To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.[2]

---

[2] Defendants note that Debtor failed to include the complete letters with the discharge debt disclaimer dated April 17, 2013 and May 6, 2014, which Defendants have supplied. *See* Dkt Item 8, ¶ 15 *cf.* Dkt Item 6, Declaration of Richard P. Haber, Esq, ¶ 2. This Court may rely on the complete letters provided by Defendants in deciding the Motion to Dismiss, because this Court may consider documents incorporated into the Complaint by reference or

8

[Dkt Item 6, Exhibits 1 and 2]

The sixth complained of letter, dated November 26, 2014[3], which invites Plaintiff to settle the account to avoid foreclosure, contains the additional notice: "We understand that you've received a Chapter 7 discharged bankruptcy and you don't have to pay any amount toward this account. We also realize that the lien we hold on the property may keep you from moving on." [Dkt Items 1, Exhibit A, and 6, Exhibit 3] As such, by taking actions either required by New York foreclosure law and not taking any steps to collect on a discharged in personam liability, there is far more than a "fair ground of doubt" as to whether Chase's actions might be considered lawful pursuant to the discharge order. *Taggart*, 139 S. Ct. at 1804.

Accordingly, this Court concludes that Debtor has failed to plausibly plead that Defendants sent any much less repeated collection letters and demands for payment in violation of the discharge injunction. Therefore, Debtor's Complaint fails to plausibly plead an impermissible attempt to collect a discharged debt.

### 2) Debtor Has Failed to Allege that the Credit "Pulls" Violated the Discharge Injunction

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681u, restricts access to consumer credit reports with limited exceptions. One exemption is found in FCRA § 1681b(a)(3)(A), which permits a creditor to obtain a consumer report without that consumer's consent "in connection with a credit transaction involving the consumer on whom the

---

attached as exhibits. *See Blue Tree Hotel*s, 369 F.3d at 217; *Int'l Tobacco*, 462 B.R. at 385; *Moxey*, 522 B.R. at 437-38.

[3] The first mortgage lien on debtor's primary residence has been the subject of a foreclosure action since May 31, 2013, and an Order appointing a referee to compute damages was signed on May 23, 2016. [Dkt Item 6, Haber Decl., ¶ 5 and Exhibit 4]

information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."

Debtor alleges that Defendants violated the discharge injunction and initiated a dispute pursuant to 15 U.S.C. § 1681(i) by pulling his credit history. [Dkt Item 1, ¶ 29] However, Defendants allege that Debtor maintained a bank account with the Defendants, that Defendants had instituted foreclosure proceedings in 2013 against a property owned by Debtor, and that Debtor directly applied for numerous loan modifications with Defendants thereafter. [Dkt Item 6, "Memorandum of Law in Support of Defendant's Motion to Dismiss" pp. 12] Because Chase's credit pulls were in connection with the maintenance of existing accounts and applications for loan modifications, it had an "objectively reasonably basis" for thinking that those pulls "might be lawful." *Taggart*, 139 S. Ct. at 1799.

Plaintiff's Complaint further alleges that Defendant made impermissible "hard" inquiries into Plaintiff's credit status on August 17, 2016 and March 2, 2017, which had a negative effect on Plaintiff's credit score. [Dkt Item 1, ¶ 17; Exhibit B] Exhibit B contains two consumer credit reports prepared for the Plaintiff: one from Transunion and another from Experian. The Experian report explicitly states, "These inquiries DO NOT affect your credit score and are not seen by anyone but you (except insurance companies may be able to see other insurance company inquiries)." [Dkt Item 1, Exhibit B pp. 2]. The Transunion report contains no such similar language but notes that Defendants' permissible purpose for performing the credit inquiry was a "credit transaction." [Dkt Item 1, Exhibit B pp. 1].

Thus, Defendants' conduct reasonably appears to be within the proper scope of the FCRA, and, in particular, within the permissible purpose requirements of FCRA § 1681b(a)(3)(A) in performing a review of the mortgage account it maintained on Debtor's

behalf. However, even if there is a question as to the appropriateness of Chase's conduct for FCRA purposes, there exists a "fair ground of doubt" that creditor's pulling of the report for an existing account was a violation of the discharge order, since there is no plausible allegation before the Court that the credit inquiry was made for the purpose of collecting a discharged in personam liability. *Taggart*, 139 S. Ct. at 1795.

Accordingly, Plaintiff's Complaint fails to plead sufficient facts that could plausibly establish a violation of the discharge order § 524(a)(2) arising from the credit report pulls.

### 3) Debtor Has Failed to Allege that Defendants' Alleged Incorrect Credit Reporting Violates the Discharge Injunction

Finally, Debtor alleges that the Defendants misreported the discharged debt on Plaintiff's credit report in furtherance of a "willful and nefarious intent" to collect a discharged debt. [Dkt Item 1, ¶ 18, Exhibit C]. Plaintiff contends that one of Defendants' accounts listed in Exhibit C, a two page excerpt from Plaintiff's consumer credit report believed to be from Transunion, incorrectly lists the pay status as "current; paid or paying as agreed" and fails to reflect that the debt has been discharged. [Dkt Item 8, ¶28]. However, Debtor misreads the Exhibit C credit report; it clearly notes his Chapter 7 bankruptcy case in his status, reflects a balance of $0 for two of Defendants' accounts with the notation "Account Included in Bankruptcy", "Bankruptcy Chapter 7; Bankruptcy Discharged", and lists a third account as closed in July 2013, with the pay status as "current; paid or paying as agreed." [Dkt Items 1, Exhibit C and 8] Thus, it is difficult to decipher what Debtor alleges is incorrect about this report.

Moreover, regarding inaction with credit reporting agencies, "[m]any courts have held that the failure of a furnisher of credit information to take affirmative steps to update the information that it has reported on a consumer's account is not, standing alone, a violation of Section 524(a)(2)." *In re McKenzie-Gilyard*, 388 B.R. 474, 481 (Bankr. E.D.N.Y. 2007). For

11

example, in *Bruno v. First USA Bank, N.A. (In re Bruno)*, 356 B.R. 89 (Bankr. W.D.N.Y. 2006), the Western District of New York held that failure to "notify a credit reporting agency that the debtor's delinquent account should be corrected to note the debtor's bankruptcy discharge" does not violate the discharge order. *Id.* at 481–82 (Bankr. E.D.N.Y. 2007) (citing *In re Bruno,* 356 B.R. at 92). Similarly, other courts have held that a creditor's mistakenly reporting of a debt as due rather than discharged in bankruptcy does not violate Section 524(a)(2). *Helmes v. Wachovia Bank, N.A. (In re Helmes),* 336 B.R. 105 (Bankr. E.D. Va. 2005); *See also Irby v. Fashion Bug (In re Irby),* 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005) (holding that a creditor's failure to take steps to ensure that debt previously discharged in bankruptcy was removed from a debtor's credit report, without any other attempts to collect the debt from the debtor, did not violate the discharge injunction); *Vogt v. Dynamic Recovery Servs. (In re Vogt),* 257 B.R. 65, 71 (Bankr. D. Colo. 2000) (holding that the failure to correct a debtor's false credit report, if not done to extract payment of a debt, does not violate the discharge injunction).

Here, Debtor has failed to plausibly allege an error in his credit report and, thus this Court need not reach whether an incorrect and uncured credit report can stand as a discharge injunction violation.

Accordingly, Plaintiff's Complaint fails to plead sufficient facts that could plausibly establish a violation of the discharge order under § 524(a)(2) arising from the credit report.

Finally, because Plaintiff did not seek leave to amend, no amendment of the complaint need be allowed. [Dkt Item 8] *See* Fed. R. Civ. P. 15, as incorporated by Fed. R. Bankr. P. 7015.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Defendants' Motion to Dismiss is granted, and all claims asserted in this adversary proceeding are dismissed; and it is further

**ORDERED**, that the Clerk of Court shall serve a copy of this Order on all parties in this adversary proceeding.



**Dated: January 22, 2021**
**Central Islip, New York**

_____
**Alan S. Trust**
**Chief United States Bankruptcy Judge**